**SO ORDERED.**

**SIGNED this 18 day of January, 2019.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

___

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

IN RE:

LIONEL L. YOW

    DEBTOR

CASE NO.
11-06011-5-SWH
CHAPTER 7

## ORDER ALLOWING OBJECTION TO CLAIM

The matter before the court is the chapter 7 trustee's Objection to Claim No. 36, Dkt. 743, filed on February 12, 2018 (the "Objection"). A response to the Objection was filed by Henry E. Miller, Jr. on March 15, 2018, Dkt. 766 (the "Response"). A hearing was held in Raleigh, North Carolina on June 12, 2018, at which the court granted the Objection with respect to Loan 1 (as defined below). The court invited the parties to file supplemental memoranda with respect to the Objection as it related to Loan 2 (as defined below), and took the matter under advisement. The Trustee filed a Supplement to his Memorandum of Law, Dkt. 860, and Mr. Miller's counsel filed an affidavit, Dkt. 865. A subsequent hearing was held in Raleigh, North Carolina on August 8, 2018. After review of the case record, and the parties' arguments and memoranda, the remainder of the Objection will be allowed.

## BACKGROUND

Lionel L. Yow (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 5, 2011 (the "Petition Date"). On October 30, 2012, John A. Northern (the "Trustee") was appointed to serve as the chapter 11 trustee. The case was converted to one under chapter 7 on May 19, 2015, and Mr. Northen was re-appointed as chapter 7 trustee.

On October 27, 2006, well before the filing of his bankruptcy petition, Mr. Yow executed personal guaranties as security for two loans made by North State Bank ("North State") to Lumina Station III, LLC ("Lumina"). The Lumina Station Loan 1 ("Loan 1") was issued in the original principal amount of $1,852,250, and was secured by a deed of trust on real property owned by Lumina. Mr. Yow's guaranty of Loan 1 was capped at the principal amount of $254,648.37. *See* Response, Exhibit 2.

Lumina Station Loan 2 ("Loan 2") was issued in the original principal amount of $343,750, and was also secured by a deed of trust on the real property owned by Lumina. *See* Response, Exhibit 10, Dkt. 766 at 28. Mr. Yow executed a personal guaranty for the full amount of Loan 2. On June 8, 2010, both notes were modified to extend the maturity date to June 27, 2011. Lumina defaulted on both notes on March 28, 2011 by failing to make payments when due. Both notes matured on June 27, 2011. Although the loans were secured by real property owned by Lumina, the guaranty obligations are unsecured as to Mr. Yow. North State sent 30-day pre-foreclosure letters[1] required by North Carolina General Statute § 45-21.16(c)(5a) with respect to both loans on September 28, 2011.

---

[1] The 30-day pre-foreclosure letters for both loans contained the following language: "Please also take notice that the Promissory Note and Deed of Trust entitle North State Bank to recover reasonable attorneys' fees *up to fifteen percent (15%) of the outstanding balance* incurred in attempts to collect the valid and outstanding debt." *See* Response Exhibits 5 and 12, Dkt. 766 at 15 and 31 (emphasis added).

On December 14, 2011, Mr. Miller, a co-guarantor on both loans, filed Claim No. 36 as a contingent unsecured claim in the amount of $606,104.31. Mr. Miller's claim was based on a potential right of contribution by Mr. Yow on the loans made to Lumina. On March 16, 2012, the real property securing the loans was foreclosed due to Lumina's prepetition payment defaults on both loans. North State applied foreclosure proceeds of $1,380,731.59 to Loan 1's balance, *see* Response, Exhibits 7 and 8, Dkt. 766 at 22, 23, leaving a deficiency balance of $455,348.18 on Loan 1. None of the proceeds were applied to Loan 2. Mr. Miller later acquired both notes from North State, *see* Objection Exhibit 14, Dkt. 766 at 38, and, as the assignee and holder of the promissory notes, filed an amendment to Claim No. 36 asserting a total debt owed in the amount of $606,104.31 on September 14, 2015 based on the balance due on both notes and other items payable under the terms of the notes. *See* Claim No. 36-2.

On February 12, 2018, the Trustee objected to the claim, contending that Mr. Miller (i) failed to provide information regarding the disposition of collateral or application of sale or foreclosure proceeds to the debt, and (ii) failed to provide an itemization, account statement, or evidence of the current indebtedness. On March 15, 2018, Mr. Miller amended the claim amount to $695,082.42 and provided supporting documents including an itemization of the total claim and asserting that interest, late fees, and attorneys' fees were properly included. *See* Claim No. 36-3 (the "Second Amended Claim"). On the same day, Mr. Miller also filed the Response. On June 8, 2018, counsel for Mr. Miller sent a letter to the Trustee, revising the amounts due under the Second Amended Claim (the "Letter"). As modified by the Letter, Claim No. 36 consists of the following items:

      **Lumina Station Loan 1**
          Principal Guaranteed by the Debtor    $254,684.37
          Prepetition Interest    $ 35,336.40
          Prepetition Attorneys' Fees    $ 43,503.11
          Total Claim Amount for Loan 1    $333,523.88
      **Lumina Station Loan 2**
          Principal Guaranteed by the Debtor    $321,368.95
          Prepetition Interest    $ 6,598.09
          Prepetition Late Fees    $ 279.48
          Prepetition Attorneys' Fees    $ 49,195.06
          Total Claim Amount for Loan 2    $377,441.58

Trustee's Supplement to Memo. Of Law, Exhibit A, Dkt. 860 at 10-11.

Both Note 1 and Note 2 contained the identical following language: "All payments must be made in United States dollars. Each payment Borrower makes on this Note will be *applied first to any charges Borrower owes other than Principal and interest*, then to interest that is due, and finally to Principal that is due." Response, Exhibits 1 and 9, Dkt. 766 at 8, 25 (emphasis added). The "charges Borrower owes other than principal and interest" include attorneys' fees.

With respect to attorney's fees, the guaranty agreement signed by Mr. Yow dated October 27, 2006 contains the following provision:

> The liability of the Undersigned hereunder shall be limited to a principal amount of $ Unlimited (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid *under all agreements evidencing the Indebtedness* and securing the payment of the Indebtedness, *and all attorneys' fees*, collection costs and enforcement expenses referable thereto.

*See* Affidavit of James O. Carter, Exhibit 6, Dkt. 766 at 28 (emphasis added).

The Note representing Loan 2 incorporates both the loan agreement and the guaranty agreement. Paragraph 5 of the Loan 2 commercial loan agreement contains the following language regarding attorneys' fees:

> COLLECTION EXPENSES AND ATTORNEYS' FEES. To the extent permitted by law, Borrower agrees to pay all expenses of collection, enforcement and

4

>   protection of Lender's rights and remedies under this Agreement. Expenses include, *but are not limited to reasonable attorneys' fees including attorney fees as permitted by the United States Bankruptcy Code, court costs and other legal expenses*.

*See* Affidavit of James O. Carter, Exhibit 5, Dkt. 865 at 14(emphasis added).

Although the dates of modification, maturity and default are the same for both Note 1 and 2, it is unclear whether the notes were enforced together. At the hearing on August 8, 2018, counsel for Mr. Miller was unable to confirm whether the notes were jointly enforced.

In his Objection to the claim as it relates to Loan 1, the Trustee contended that no post-petition interest or attorneys' fees should be allowed because the claim was not secured by property of the estate. Additionally, because the loan documents required the foreclosure proceeds to be first applied to interest, costs and attorneys' fees, and then to principal, the Trustee contended that the outstanding interest, costs and attorneys' fees incurred in connection with Loan 1 must have been paid in full when the post-petition foreclosure proceeds were applied to Loan 1 and the indebtedness reduced to $455,348.18. At the hearing on June 12, 2018, the court sustained the Trustee's Objection as to Loan 1, and ruled from the bench that the claim would be allowed with respect to Loan 1 as an unsecured claim in the amount of $254,684.37, the maximum amount guaranteed by Mr. Yow. The claims for postpetition interest and attorneys' fees were disallowed.

Loan 2 differs from Loan 1 because none of the foreclosure sale proceeds were applied to that debt. As set forth in the June 8, 2018 Letter, the amount outstanding (exclusive of attorneys' fees) as of the Petition Date was $328,246.52, comprised of a principal balance of $321,368.95, interest of $6,598.09, and late fees of $279.48. Mr. Miller has not submitted any evidence to establish that any attorneys' fees, which remain outstanding, were actually incurred prior to the Petition Date separate and apart from those included in Loan 1. The Trustee does not object to allowance of an unsecured claim for principal, prepetition interest and prepetition late fees in the

requested amounts. However, the Trustee objects to the claim for prepetition attorneys' fees based on a statutory formula of fifteen percent of the indebtedness as provided by North Carolina General Statutes § 6-21.2(2). He contends that allowing Mr. Miller to add attorneys' fees based on fifteen percent of the unsecured obligation, with no showing that attorneys' fees were actually incurred prepetition, would elevate this claim above those for postpetition attorneys' fees of oversecured creditors, which bankruptcy courts routinely examine for reasonableness. Therefore, the Trustee contends that Claim No. 36 should be allowed as an unsecured claim in the aggregate amount of $582,930.89, representing (i) $254,684.37, the outstanding balance of Loan 1 as of the Petition Date as limited by the Mr. Yow's guaranty and as previously determined by the court, and (ii) $328,246.52, the outstanding principal, interest and late fees for Loan 2 as of Petition Date.

Mr. Miller contends that the loans and guaranties went into default on March 28, 2011, and they remained in default as of the Petition Date. Therefore, he maintains that because Mr. Yow's guaranty agreement provides for recovery of "reasonable attorneys' fees," rather than a specific percentage of the outstanding balance of the obligation, North Carolina General Statutes § 6-21.2(2) applies and "reasonable attorneys' fees" is construed to mean fifteen percent of the outstanding balance. Further, Mr. Miller contends that prepetition attorneys' fees in the amount of $49,195.06 are properly included in the amounts owed by the estate under Loan 2.

## DISCUSSION

Section 502 of the Bankruptcy Code governs the allowance of claims to be paid from the bankruptcy estate. "A proof of claim is the creditor's statement as to the amount and character of the claim." *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004) (citations omitted). Pursuant to § 502, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C.

§ 502(a). If an objection to the claim is made, "the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount," unless one of the exceptions enumerated under section 502(b) is applicable. 11 U.S.C. § 502(b). Mr. Miller seeks to include in the calculation of Loan 2 a flat fifteen percent attorneys' fees component in the amount of $49,195.06.

Because Mr. Miller's claim concerns prepetition attorneys' fees as part of an unsecured claim, the claim could be disallowed under is § 502(b)(1), which provides that a claim cannot be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under *any agreement or applicable law* for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1) (emphasis added). Therefore, the court must evaluate whether Mr. Miller's claim for attorneys' fees would be disallowed pursuant to "any agreement or applicable law." *Id.* (emphasis added).

As a general rule, "the allowance or disallowance of a claim in bankruptcy is a matter of federal law left to the bankruptcy court's exercise of its equitable powers." *Canal Corp. v. Finnman*, 960 F.2d 396, 404 (4th Cir. 1992). While the filing of a claim in accordance with Rule 3001(f) constitutes *prima facie* evidence of the amount and validity of the claim, *Stancill,* 372 F.3d at 640; *see also* Fed. R. Bankr. P. 3001(f), a creditor's claim may be disallowed pursuant to any "applicable law" under § 502(b)(1). 11 U.S.C. § 502(b)(1). The term "applicable law" encompasses not only applicable state law but also bankruptcy law. *See Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 451-52 (2007) (observing disallowance of claim made in error when conclusion not made pursuant to "applicable nonbankruptcy law" under § 502(b)(1) or pursuant to any "provision of the Bankruptcy Code."); *see also* Jennifer M. Taylor, Christopher J. Mertens, *Travelers and the Implications on the Allowability Of Unsecured Creditors' Claims for*

7

*Post-Petition Attorneys' Fees Against the Bankruptcy Estate*, 81 Am. Bankr. L.J. 123, 146 (2007) ("However, § 502(b)(1) does not restrict 'applicable law' to 'applicable state law' . . . Congress' decision to use the broader phrase "applicable law" in § 502(b)(1), strongly suggests that it did not intend to restrict the provision to nonbankruptcy law.").

In bankruptcy, the basic federal rule "is that state law governs the substance of claims." *Travelers Cas. & Sur. Co. of Am.*, 549 U.S. at 450 (2007). Indeed, "the existence of a claim is controlled by state law." *Finnman*, 960 F.2d at 404. In North Carolina, attorneys' fees are generally not recoverable "absent express statutory authority for fixing and awarding them." *Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc.*, 178 N.C. App. 535, 540-41, 632 S.E.2d 192, 196 (2006). However, contractual agreements to pay attorneys' fees are valid and enforceable, pursuant to North Carolina General Statutes § 6-21.2:

> (1) If such note . . . provides for attorneys' fees in some specific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent (15%) of said "outstanding balance" owing on said note . . . .
>
> (2) If such note . . . provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note.

N.C. Gen. Stat. § 6-21.2. The majority of North Carolina courts interpret the language of § 6-21.2 as providing for two types of attorneys' fees provisions: those that specify a contractually agreed percentage between the parties, and those that do not specify any percentage at all. *In re Brier Creek Corporate Ctr. Associates Ltd. P'ship*, No. 12-01855-8-SWH, 2013 WL 211119, at *6 (Bankr. E.D.N.C. Jan. 18, 2013). Subsection (1) of § 6-21.2 governs the former category, while subsection (2) governs the latter.

As set forth above, both the guaranty and loan agreement call for "reasonable attorneys' fees." Accordingly, subsection (2) of N.C. Gen. Stat. § 6-21.2 applies.

Mr. Miller relies on the note's reference to "reasonable attorneys' fees" and contends that the application of North Carolina General Statute § 6-21.2(2) entitles him to fifteen percent of the outstanding balance owed on Loan 2 at the time the petition was filed. However, a review of North Carolina case law regarding the meaning of subsection (2) reveals that the application of § 6-21.2(2) is not settled. In *Monsanto Co. v. Are-108 Alexander Road, LLC*, No. 1:10CV898, 2013 WL 3280265, at *1 (M.D.N.C. June 27, 2013), Judge Osteen described the issue as "[w]hether the statute mandates an award of 15% of the 'outstanding balance' as attorneys' fees or whether it merely serves as a cap on such fees." The Supreme Court of North Carolina has not rendered a decision clarifying the proper interpretation of the statute.

In *Coastal Prod. Credit Assoc. v. Goodson Farms, Inc.*, 70 N.C. App. 221, 225, 319 S.E.2d 650, 654 (1984), the North Carolina Court of Appeals discussed § 6-21.2(2) and held that this statutory provision ". . . becomes operative only on failure to specify *any* percentage." However, the court also stated that, "[t]he General Assembly apparently intended G.S. 6-21.2(2) as a fall-back only in case the agreement contained nothing regarding the parties' intent as to what constituted a reasonable percentage. It apparently did not intend it as a means of legislating a total end to hearings on attorneys' fees." *Id.*

This court has previously observed that "by referring to subsection (2) as a 'fall-back only' statute, the Court of Appeals arguably implied that this subsection should not trump the clear intent of the parties as reflected in the agreement, regardless of whether the parties opted to include a specific percentage." *Brier Creek*, 2013 WL 211119, at 14-15. Since *Coastal*, North Carolina

9

courts and federal courts within North Carolina have diverged in their interpretations of § 6-21.2(2).

While the Court of Appeals has given divergent interpretations of the § 6-21.2(2) in the last three decades, "recent cases suggest that strict application of the 15% calculation is not proper." *Brier Creek*, 2013 WL 211119, at 20. For example, in *Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc.*, 178 N.C. App. 535, 541, 632 S.E.2d 192, 197 (2006), the North Carolina Court of Appeals upheld an award of less than fifteen percent where the "[a]ttorney testimony, affidavits, and billing statements supported the attorney fees award" and the contract for sale simply contained the language "reasonable attorneys' fees" without specifying a percentage amount. Citing to its decision in *Coastal*, the court emphasized that "[w]hen the trial court determines that an award of attorney fees is appropriate under the statute, the amount of attorney fees awarded lies within the discretion of the trial court." *Id.* (citing *Coastal Prod. Credit Ass'n v. Goodson Farms, Inc.*, 70 N.C. App. 221, 226, 319 S.E.2d 650, 655, *disc. rev. denied*, 312 N.C. 621, 323 S.E.2d 922 (1984)).

Similarly, in *Telerent Leasing Corp. v. Boaziz*, 200 N.C. App. 761, 767, 686 S.E.2d 520, 524 (2009), the Court of Appeals affirmed the trial court's award of attorneys' fees "well below the statutory ceiling of fifteen percent" in the context of a lease agreement. The lease agreement contained only the language "reasonable attorneys' fees" and the court emphasized that "[t]he law requires evidence and findings of fact supporting the reasonableness of the award." *Id.* at 766 (citations omitted). These decisions have not been overruled.

The federal courts within North Carolina have also rendered decisions following the interpretation of § 6-21.2(2) outlined in *Telerent* and *Bombardier*. In *Silverdeer St. John Equity Partners I LLC v. Kopelman*, No. 5:11-CV-95-JG, 2012 U.S. Dist. LEXIS 136287, at *15

(E.D.N.C. Sep. 24, 2012), the court examined a note containing the language "reasonable attorneys' fees." The court upheld an award of attorneys' fees of less than fifteen percent in favor of the plaintiff after reviewing the affidavits and billing records. *Id.* at 19. The court referred to attorneys' fees request by the plaintiff as "well beneath the fifteen percent (15%) statutory ceiling, which some North Carolina courts have found to be presumptively reasonable[,]" but emphasized that the amount deserved "further scrutiny by the court." *Id.*

In *Ergs II, L.L.C. v. Lichtin*, No. 5:12-CV-431-FL, 2013 WL 12250339, at *4 (E.D.N.C. Aug. 22, 2013), the court examined loan and guaranty agreements and treated the fifteen percent statutory rate of § 6-21.2(2) as "a cap on the amount of attorneys' fees." In *Am. First Fed., Inc. v. Zaria Props., LLC*, No. 3:15-cv-00404-FDW-DSC, 2017 U.S. Dist. LEXIS 94358, at *14 (W.D.N.C. June 19, 2017), where the note and guaranty agreement contained language providing for the collection of attorneys' fees as costs and did "not specify an amount of fees to be awarded[,]" the court applied § 6-21.2(2) and upheld an award totaling less than fifteen percent of the indebtedness. The court concluded that affidavits and billing statements supported the award and the amount was reasonable. *Id.*

This court has previously addressed the application of § 6-21.2, observing that subsection (2) "should instead be applied in a manner consistent with its interpretation as a 'fall-back only' statute, i.e., to be used only where there is no other indication of intent." *Brier Creek*, 2013 WL 211119, at 19. Two years later, in *In re Ormond*, No. 12-05489-8-SWH, 2015 Bankr. LEXIS 653, at 16 (Bankr. E.D.N.C. Mar. 3, 2015), this court considered the application of § 6-21.2(2) again where an agreement called for "reasonable attorneys' fees to the extent permitted by law." After reviewing the applicable North Carolina case law, the court refused to award fifteen

11

percent of the outstanding balance as attorneys' fees and required the claimant to submit affidavits or other documentation to support the fee request. *Id.* at 17-18.

Based on the foregoing analysis, the court concludes that an award of fifteen percent as attorneys' fees without the opportunity to review documentation that supports the award would be unreasonable and improper. As Judge Flanagan observed in *Ergs*, "[t]he weight of recent cases in lower courts . . . supports looking at evidence of reasonableness when making an award under N.C. Gen. Stat. 6-21.2(2), up to a statutory cap of fifteen percent (15%)." *Ergs II, L.L.C. v. Lichtin*, 2013 WL 12250339, at 5. The courts that uphold an award of less then fifteen percent do so by looking at evidence of reasonableness. *See id.*

Assuming, *arguendo*, that the language "reasonable attorneys' fees" entitles Mr. Miller to a statutory award of fifteen percent, ultimately, the allowance of claims in bankruptcy is controlled by federal law because all claims are reviewable by the bankruptcy court. Although North Carolina state law creates Mr. Miller's claim for attorneys' fees, the bankruptcy court is permitted to exercise its federal equitable power to disallow the per se award of fifteen percent as attorneys' fees as unreasonable under these circumstances. *See Finnman*, 960 F.2d at 404; *see also Butner v. United States*, 440 U.S. 48, 55 (1979) (property interests are created and defined by state law and should not be analyzed differently in a bankruptcy proceeding unless "some federal interest requires a different result."); 11 U.S.C. § 105(a). To date, counsel for Mr. Miller has provided no evidence of any legal work performed prepetition that was not already included in his claim as it relates to Note 1, and thus Mr. Miller has not carried his "ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence" with respect to prepetition attorneys' fees related to Loan 2. *Harford Sands*, 372 F.3d at 640.

Further, policy considerations support the court's decision. As Judge Bullock observed in *Centura Bank v. Brown (In re Brown)*, "the strict enforcement of a percentage fee assessment will be disproportionate to the amount of fees actually incurred by the creditor." *Centura Bank v. Brown (In re Brown)*, No. 1:99CV01077 at 9 (M.D.N.C. Aug. 15, 2000). Allowing Mr. Miller to recover fifteen percent of the indebtedness as attorneys' fees without regard to the fees actually incurred could provide him with a windfall at the expense of other creditors, to the detriment of the bankruptcy estate, and undermine the "fundamental purposes of the Bankruptcy Code." *Id.*

## CONCLUSION

For the foregoing reasons, the Trustee's Objection to Claim No. 36 is ALLOWED. Mr. Miller's claim is allowed as an unsecured claim in the aggregate amount of $582,930.89, representing (i) $254,684.37, the outstanding balance of Loan 1 as of the Petition Date, and (ii) $328,246.52, the outstanding principal, interest and late fees for Loan 2 as of Petition Date.

**END OF DOCUMENT**